UNION TRUST CO. *v.* MORGANS.

BILLS AND NOTES—ACTION—WITNESSES — TRANSACTION WITH DECEDENT.

Where, in an action by an administrator on a note payable to his intestate, there is no evidence as to the transaction which resulted in the giving of the note, except the note, the evidence of the maker being incompetent under the statute relative to testimony as to transactions with decedents, judgment must be rendered for plaintiff.

Error to Oakland; Smith, J. Submitted April 4, 1905. (Docket No. 6.) Decided May 12, 1905.

Assumpsit by the Union Trust Company, administrator de bonis non with the will annexed of the estate of Lucetta R. Medbury, deceased, against William H. Mor-

gans on a promissory note. There was judgment for defendant, and plaintiff brings error. Reversed, and judgment entered for plaintiff.

*Russel & Campbell*, for appellant.

*Patterson & Patterson*, for appellee.

MOORE, C. J. In her lifetime Mrs. Lucetta Medbury, who lived in Detroit, was the owner of a lighting system at Pontiac, Mich. The defendant was her manager. She executed to him papers reading as follows:

"DETROIT, Sept. 9, 1899.
"To Whom It May Concern:
"I hereby agree to accept of William H. Morgans, the sum of sixty-two thousand two hundred and ninety-eight 17/100 dollars on or before the 27th day of September, 1899, in full for the Pontiac Gas Co. plant and property agreeable to a certain inventory, dated Detroit, Sept. 9th, 1899, as made by Isaac C. Baxter of this city.
"L. R. MEDBURY.
"Witness: GEORGE N. BRADY.
"I extend this proposition from this date until November 27, 1899.
"L. R. MEDBURY."

On the 20th of November, 1899, the defendant delivered to Mr. Jessop, who went to Pontiac, representing Mrs. Medbury, drafts amounting to $62,298.17, and a note reading as follows:

"$2,000.00.          DETROIT, MICH., Nov. 20, 1899.
"Three years ( on or before ) after date, without grace, I promise to pay to the order of Lucetta R. Medbury, Two Thousand Dollars, at the First National Bank of Detroit, with interest at 6 per cent. per annum. Value received.
"W. H. MORGANS."

And the sale of the lighting plant by Mrs. Medbury was then completed. Later she died. The note was not paid, and this suit was brought. It was tried before the

circuit judge without a jury.   He rendered a judgment in favor of defendant.   The case is brought here by writ of error.

The second and sixth paragraphs of the findings of fact made by the circuit judge present the questions involved. They read as follows:

2.  That the time allowed in Exhibit A proving too short for the defendant Morgans to organize a company and procure the necessary money to take over the plant, Mrs. Medbury on or before November 27, 1899, extended the time from September 27, to November 27, 1899.   From the use for the words ' I extend this proposition,' without naming any change in the amount, I infer and believe the extension carried with it an option to Mr. Morgans to have a transfer of the plant made by Mrs. Medbury at the same amount, $62,298.17, and that it was so understood by the parties at the time the extension of time was made.   *   *   *

" 6   There is no way of determining with certainty from this record why the note was exacted and given, or whether it was in fact based upon any adequate consideration.   Mrs. Medbury is deceased, and the testimony of Mr. Morgans was excluded by the statute.   They had a conversation about it at Mrs. Medbury's residence in Detroit a few days before November 20, 1899, but only a fragment of their conversation, relating to whether or not it should draw interest, was overheard by the witness Jessop.

"From the surrounding circumstances, and from the facts found in paragraph 2 of the finding, I infer and believe that, between September 27th and the time of conversation in Detroit spoken of by Jessop, Mrs. Medbury reached the conclusion that she was selling the plant too cheaply, and in some manner notified Mr. Morgans he could not have it unless he increased the price by $2,000, and that the time was so short before the expiration of the option as extended, and the arrangements with the Chicago parties in such a condition, that he was compelled either to jeopardize the arrangements for the sale of the plant to the new company, or comply with her demands, and that he chose the latter alternative, and that, not having the money himself, and not having arranged for the furnishing by the Chicago parties of this extra amount, he promised to give and she promised to accept his personal note for the amount in lieu of the money, and that in pursuance of such a promise by him, she caused the deeds and the note to be pre-

pared between the time of this conversation in Detroit and November 20th. This, in my belief, accounts for Jessop bringing the note to Pontiac, ready for signature by Morgans.

"It is, however, but an inference or belief, with nothing really tangible in the record upon which to base it. Perhaps I may have unconsciously been influenced in reaching that belief by my acquaintance with the defendant Morgans, and his offer to testify in the case."

Mr. Morgans was sworn as a witness, but his testimony was excluded as being within the statute. The only testimony bearing upon the consideration for which the note was given is the papers themselves, the testimony of Mr. Jessop, and certain entries made by him in the books of Mrs. Medbury of his own volition, and which are not inconsistent, if competent testimony, with the idea that the note was given, as it states, for value received. The testimony of Mr. Jessop in relation to his knowledge of the giving of the notes is very meager, and is as follows:

"*Q.* What did you say to Mr. Morgans with reference to his giving this note ?   *   *   *

"*A.* I didn't say anything to him that I know of.

"*Q.* Didn't you ask him to give a note ?

"*A.* I did not.

"*Q.* Now, to refresh your recollection, didn't you bring the note out from Detroit, already drawn up ?

"*A.* Oh, I did that. I handed it to him, and he signed it.

"*Q.* And didn't you tell him he must give the note before you turned over the other papers ?

"*A.* Well, I don't remember of telling him that, but that was a part of the deal.

"*Q.* Well, that was a part of the instructions ?

"*A.* Part of the instructions; yes, sir.

"*Q.* Yes; that you must not turn over the papers until he gave his note for $2,000. If he paid the amount specified in the option ?

"*A.* It was to be one deal.   *   *   *

"*Q.* Well the deal was to be $62,298.17 in cash, and Mr. Morgans' note for $2,000. Now, is that all the in-

structions you had from Mrs. Medbury in regard to this total of $64,000 and something?

"*A.* That is all that I recollect of.

" *Q.* Did you have any instructions in regard to consummating that deal from any one else except from Medbury?

"*A.* I did not.

" *Q.* Now, what was the $2,000 note given for?

" *A.* I didn't know.    *    *    *

" *Q.* Do you recollect of being present at an occasion before this matter was closed up, when Mrs. Medbury and Mr. Morgans were present and had a conversation about adding $2,000 to the option—contract price?

"*A.* Well, yes; but it was only in this way:  Mr. Morgans wanted the note not to bear interest.

" *Q.* Yes?

"*A.* And Mrs. Medbury would not consent to it.    Now, that is all that I can remember in regard to the transaction at all.

" *Q.* You have no recollection about the conversation that took place before that, or around you there before that?

"*A.* I don't remember.

" *Q.* Do you remember the occasion of there being any talk about the note, or what led up to it?

"*A.* No; the deal, as I remember it—the deal had already been made.

" *Q.* Yes?

"*A.* And Mr. Morgans wanted the note made without interest, to which Mrs. Medbury would not consent."

There is nothing in the testimony of Mr. Jessop or the other testimony from which the inference can be fairly drawn that the note was not given for a valid consideration. The trial judge suggests that he may have been unconsciously influenced in his conclusion by his acquaintance with the defendant and his offer to testify. Unless this had weight with the trial judge, it is difficult to see how he reached the conclusion he did. If it did have weight with him, then the object sought to be prevented by the statute was not accomplished. A business transaction occurred between Mrs. Medbury and Mr. Morgans,

resulting in his giving her a written promise to pay $2,000 at a stated time, for value received. The mouth of Mrs. Medbury is closed by death. The mouth of Mr. Morgans is closed by the law. There is no competent evidence to impeach the written promise. 4 Am. & Eng. Enc. Law (2d Ed.), p. 186.

Judgment is reversed, and a judgment may be entered here for the amount of the note and interest, with costs of both courts.

McALVAY, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.